Clement A. Griscom, III v. Commissioner.
Griscom v. Commissioner
Docket No. 6429.
United States Tax Court
1946 Tax Ct. Memo LEXIS 209; 5 T.C.M. (CCH) 304; T.C.M. (RIA) 46097; April 25, 1946
*209 H. Ober Hess, Esq., for the petitioner. Karl W. Windhorst, Esq., for the respondent. HILL Memorandum Opinion HILL, Judge: This proceeding involves income taxes for the years 1937, 1938 and 1939 in the following amounts: 1937
$2,020.30
1938
142.81
1939
28.91
In addition to other adjustments not in dispute respondent determined that petitioner's distributive share of the net earnings of Cassatt & Co., a partnership, during the taxable years was 26.29 per cent. Petitioner assigns such action as error, contending that his distributive share of these net earnings is fixed by the partnership agreement at five per cent. The facts are found as stipulated. For the purposes of the present discussion we shall set out. only those facts necessary to a determination of the issue in question. The factual background of this controversy is discussed at some length in . [The Facts] Petitioner is an individual residing at Gladwynne, Haverford, Pennsylvania, and duly filed his income tax returns for the years in question with the collector of internal revenue at Philadelphia. For sometime prior to *210 January 1, 1935, petitioner had been a general partner in the firm of Cassatt & Co., which organization conducted an extensive stock brokerage business in Philadelphia and New York. According to the partnership agreement under which Cassatt & Co. operated, petitioner's distributive share of the profits was five percent. On or about January 2, 1935, Cassatt & Co., because of continued operating losses, determined to go out of business and arranged with E. A. Pierce & Co., a brokerage house and a member of the New York Stock Exchange, to take over its accounts. Six of the general partners of Cassatt & Co. were indebted to the first by virtue of the losses hereinabove referred to and their capital accounts were overdrawn. On February 18, 1935, all of the general partners of Cassatt & Co. entered into an agreement respecting the withdrawal of these six partners from the partnership and the liquidation of the business. This agreement provided, inter alia, that the six retiring partners would remain personally liable for all obligations, liabilities and debts of the partnership outstanding as of that date. It was further stipulated that four of the remaining general partners, including petitioner *211 would proceed with the liquidation of the assets of Cassatt & Co. to the end that all partnership liabilities be satisfied in so far as possible out of the assets of the partnership. It was further provided that in the event the assets would be insufficient to satisfy these debts the remaining liabilities to the creditors would be borne by all of the original partners in agreed shares, of which petitioner's share was five percent. On the same day the remaining partners, who agreed to liquidate the business, signed a liquidation agreement whereby it was provided that after the payment of all creditors the remaining assets of the firm should be divided among those six partners, including petitioner, whose capital accounts with the first showed a credit balance. The first $818,030 so available for distribution was to be distributed ratably to these partners. Petitioner's share in such sum was fixed as approximately 22 percent, (180,550) / (818,030). In the event of future earnings over and above this amount petitioner's interest was 25 percent. The partnership returns filed by Cassatt & Co. for the years 1936 to 1939, inclusive, reflected losses in the following amounts: 1936
$11,055.49
1937
16,832.33
1938
48,395.68
1939
54,000.61
*212 In computing his individual tax for these years petitioner claimed approximately 22 percent of the firm's losses as his distributive share. Respondent in auditing the partnership return for 1936 revised the net income of Cassatt & Co. to show a profit of $84,967.06. This adjustment resulted in deficiencies in income taxes of five of the remaining partners which included petitioner. These partners contested respondent's action by filing petitions with the Board of Tax Appeals. There, the proceedings were consolidated and the action of the Commissioner sustained. The opinion and decision of the Board in these cases are reported under the name of . The action of the Board was sustained on appeal by the . The correct amount of petitioner's distributive share in the earnings of Cassatt & Co. was not determined in this proceeding and was, in fact, not in issue. The respondent made similar adjustments to the partnership income for the taxable years 1937, 1938 and 1939, which action resulted in part in the deficiencies now in controversy. [Opinion] Petitioner does *213 not now question that Cassatt & Co. had net earnings during these years but only contends that his distributive share is five percent as fixed by the partnership agreement. Respondent contends that petitioner is bound by the earlier proceedings to the extent of his admission that he was one of four sole partners after February 18, 1935, and further that petitioner's treatment on his individual tax returns by claiming 22 percent of the net loss bars him from contending otherwise here. We think respondent is in error in this respect. Neither res judicata nor estoppel is pleaded. Moreover, it is stipulated that this particular question was not presented or considered by the Board of Tax Appeals or the Circuit Court. We think we are at liberty to consider this case on its merits without reference to the above cited proceedings. The dissolution agreement signed by all of the original partners on February 18, 1935, expressly provided that all of them were to remain liable for their share of the partnership debts. This agreement merely carried out the provisions of the Pennsylvania statutes. See Section 98, [*] 1, 59 Purdon's Pa. Stat. Annotated. In that agreement petitioner's liability *214 for those debts is fixed at five percent. The liquidation agreement of the six remaining partners, including petitioner, entered into on the same day provided that when all firm debts were paid these partners were to share in any excess. Of the first $818,030 of such excess petitioner's share was to be approximately 22 percent. Additional earnings over and above this amount were to be distributed to these same individuals and petitioner's interest therein was to be 25 percent. The vital point in this agreement, we think, is that petitioner's larger share was not to become effective until all outstanding partnership debts had been satisfied. It is stipulated that all of the net earnings of Cassatt & Co., during the taxable years, were applied to the payment of those firm debts which were outstanding as of January 15, 1935. None of the earnings in liquidation or the assets were available for distribution to these six partners except in so far as they paid off these partnership debts. The conditions under which petitioner and the others were to get a larger interest in the earnings or assets of Cassatt & Co. never occurred. We hold that those provisions of the agreements of February 18, 1935, giving *215 petitioner a 22 percent interest in the earnings of Cassatt & Co. did not become operative. At all times during the taxable years petitioner's interest in the earnings was fixed at five percent by the partnership agreement. This agreement is controlling and we have no power to alter or amend it. See , and . It follows that respondent erred in determining that petitioner's distributive share of the income of Cassatt & Co. for the taxable years involved was in excess of five percent as provided in the liquidating agreement of February 18, 1935. Because of uncontested adjustments, Decision will be entered under Rule 50.